## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| CONNIE CURTS, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 4:23-cv-00427-DGK |
| EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE, LLC, EDGEWELL PERSONAL CARE BRANDS, LLC, AND PLAYTEX MANUFACTURING, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Plaintiff Connie Curts, on behalf of herself and all other similarly situated Missouri consumers, for her Amended Complaint against Defendants Edgewell Personal Care Company ("Edgewell"), Edgewell Personal Care, LLC ("EPC"), Edgewell Personal Care Brands, LLC ("EPC Brands"), and Playtex Manufacturing, Inc. ("Playtex") (collectively referred to as "Defendants"), states and alleges as follows:

### Nature of the Action

1.      This lawsuit concerns Defendants' marketing and sale of Wet Ones® antibacterial hand wipes ("Wet Ones®" or the "Product"), which Defendants represent to consumers as a product that "kills 99.99% of germs." Defendants' representation of the germ-killing ability of the hand wipes is false, deceptive, and misleading because the wipes do not actually have that ability and do not actually "kill 99.99% of germs." Defendants' representation of the germ-killing ability of the hand wipes is also false, deceptive, and misleading because Edgewell did not verify the truth of the "kills 99.99% of germs" representation before prominently labeling Wet Ones® hand wipes

with this representation. Defendants' unlawful practices have caused financial injury to all Missouri consumers who have purchased Wet Ones® hand wipes.

2.     Defendants' conduct as alleged in this case violates the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.*, which prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1.

## Procedural History Relevant to the Amended Complaint

3.     Plaintiff filed this action against Edgewell on August 27, 2020, by filing her Class Action Petition in the Circuit Court of Jackson County, Missouri.

4.     On March 9, 2022, Edgewell filed a Motion to Join Additional Parties (the "Motion to Join") in this action. In its Motion to Join, Edgewell argued that three of its wholly-owned subsidiaries –EPC, EPC Brands, and Playtex – are necessary parties under Missouri Rule of Civil Procedure 52.04(a). Edgewell moved the Court for an order joining EPC, EPC Brands, and Playtex as necessary parties.

5.     Plaintiff vigorously opposed the Motion to Join, and she filed her Suggestions in Opposition to the Motion to Join on March 21, 2022.

6.     On March 22, 2022, the Circuit Court of Jackson County, Missouri (the "State Court") entered an Order summarily granting Edgewell's Motion to Join and directed that EPC, EPC Brands, and Playtex be joined as defendants.

7.     On March 29, 2022, Edgewell's counsel (Megan McCurdy, John Moticka, and Ashley Crisafulli of the law firm Stinson LLP) entered their appearance in this action as counsel for additional defendants EPC, EPC Brands, and Playtex.

2

8.     On April 8, 2022, Defendants removed this case to the United States District Court for the Western District of Missouri (the "federal court"), citing 28 U.S.C. §§ 1441, 1446, and the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. §§ 1332(d) and 1453. Defendants asserted in their Notice of Removal that removal was "timely filed on April 8, 2022, within thirty (30) days of the March 22, 2022 Order granting Edgewell's Motion to Join EPC Brands, EPC, and Playtex as Defendants to the Action."

9.     On April 15, 2022, Defendants filed a motion in the federal court to dismiss Plaintiff's First Amended Petition.

10.     After extensive briefing on both Plaintiff's motion to remand and Defendants' motion to dismiss was filed in federal court, the federal district court (Senior United States District Judge Gary A. Fenner) granted Plaintiff's motion to remand in an order issued on December 14, 2022. In its order, the federal district court agreed with Plaintiff that Defendants' removal was untimely.

11.     The federal district court stated: "Having found the removal untimely, the Court declines to address Plaintiff's remaining arguments for remand." Because the district court remanded the case, it did not rule on Defendants' motion to dismiss and denied that motion as moot.

12.     On December 23, 2022, Defendants filed a petition with the United States Court of Appeals for the Eighth Circuit for permission to appeal the district court's order remanding the case pursuant to 28 U.S.C. § 1453(c). Plaintiff filed an answer in opposition to this petition on January 3, 2023. The Eighth Circuit denied Defendants' permission to appeal on January 9, 2023.

13.     On January 23, 2023, Defendants moved the State Court to amend and/or clarify its March 22, 2022 Order granting Edgewell's Motion to Join. After full briefing, the State Court heard oral argument on May 24, 2023 on Defendants' motion to amend and/or clarify.

14.     On May 26, 2023, the State Court issued its Order Granting Motion for Class Certification, thereby authorizing Plaintiff and the undersigned counsel to bring this action as a class action on behalf of a class of purchasers of Wet Ones® for personal, family, and household purposes in the State of Missouri since August 27, 2015.

15.     On June 1, 2023, the State Court granted in part the motion to amend and/or clarify, and it issued an Amended Order joining EPC, EPC Brands, and Playtex as Necessary Parties (the "Amended Joinder Order"). In the Amended Joinder Order, the State Court ordered Plaintiff to file a Second Amended Petition within ten (10) days of the order including EPC, EPC Brands, and Playtex as defendants.

16.     On June 12, 2023, Plaintiff filed her Second Amended Petition to comply with the State Court's directives in the Amended Joinder Order.

17.     On June 16, 2023, Defendants removed this case for a second time to the United States District Court for the Western District of Missouri, again citing 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453.

18.     On June 22, 2023, Senior United States Judge Fenner issued an order recusing himself from any further involvement in this case. (Doc. 13.) The case was reassigned to United States District Judge D. Gregory Kays (the "Federal Court").

19.     On June 23, 2023, Defendants moved to dismiss Plaintiff's Second Amended Class Action Petition pursuant to Fed. R. Civ. P. 12(b)(6).

20.     On July 11, 2023, the Federal Court addressed Plaintiff's motion for extension of time to respond to Defendants' motion to dismiss by entering an Order (Doc. 17) temporarily staying the case. In its Order Temporarily Staying Case, the court "stay[ed] this case pending its ruling on Plaintiff's anticipated motion to remand," and the court granted Plaintiff until July 28, 2023 in which to file her motion to remand. (Doc. 17, at 2.)

21.     On July 28, 2023, Plaintiff filed her motion to remand the case to the Circuit Court of Jackson County, Missouri.

22.     After Defendants filed their opposition to the motion to remand and Plaintiff filed her reply in support of the motion, the Federal Court denied the motion to remand by Order dated October 17, 2023 (Doc. 22). Among other things, the Federal Court found that the State Court ordered that EPC, EPC Brands, and Playtex be joined under Missouri Rule of Civil Procedure 52.04 as necessary parties because the State Court determined that Plaintiff could not be accorded complete relief without them. (Doc. 22 at 13.)

23.     On October 19, 2023, the Federal Court entered a minute Order lifting the temporary stay (Doc. 23). In its Order Lifting Temporary Stay, the court granted Plaintiff until November 2, 2023 in which to file her response to Defendants' motion to dismiss.

24.     Plaintiff files this Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B), which provides that a party may amend its pleading once as a matter of course within 21 days after service of a motion under Rule 12(b). This Amended Complaint is filed within 21 days of Defendants' filing and service of their Rule 12(b)(6) motion to dismiss on June 23, 2023, not including the period of time this case was stayed from July 11, 2023 to October 19, 2023.

25.     Plaintiff files this Amended Complaint to address and incorporate the Federal Court's rulings in its Order Denying Motion to Remand (Doc. 22) and to remedy the alleged deficiencies in Plaintiff's Second Amended Petition under federal pleading rules raised by Defendants in the suggestions in support of their motion to dismiss (Doc. 15).

## **The Parties**

26.     Plaintiff Connie Curts ("Plaintiff") is a Missouri citizen and resident of Lee's Summit, Jackson County, Missouri. In early 2016, she purchased a canister of Wet Ones® hand

wipes from a Wal-Mart store in Lee's Summit, Missouri. She purchased the product for personal, family, and household purposes.

27. Defendant Edgewell Personal Care Company ("Edgewell") is a Missouri corporation which maintains its principal place of business at 6 Research Drive, Shelton, Connecticut. Edgewell is in the business of marketing and selling personal care products, including Wet Ones® hand wipes. Edgewell and its consolidated subsidiaries advertise its hand wipes through various means, including on-product labels, web-based marketing, and print advertisements. This advertising prominently and consistently represents Wet Ones® as a product that "Kills 99.99% of Germs" without any reservation or limitation whatsoever. Wet Ones® hand wipes are sold in stores and via online retailers to consumers throughout the State of Missouri.

28. Defendant Edgewell Personal Care Brands, LLC ("EPC Brands") is a wholly owned subsidiary of Edgewell which is 100% controlled by Edgewell. EPC Brands' sole member is Edgewell. EPC Brands is a limited liability company organized under the laws of the State of Delaware that maintains its principal place of business at 6 Research Drive, Shelton, Connecticut. Plaintiff is naming EPC Brands as a defendant as directed by the State Court in its June 1, 2023 Amended Joinder Order and pursuant to the findings and rulings of the Federal Court in its October 17, 2023 Order Denying Motion to Remand.

29. According to information provided by Defendants in this action, EPC Brands distributes Wet Ones®.

30. Defendant Edgewell Personal Care, LLC ("EPC") is a wholly owned subsidiary of Edgewell which is 100% controlled by Edgewell. EPC's sole member is Playtex Products, LLC; Playtex Products, LLC's sole member is EPC Brands; and EPC Brands' sole member is Edgewell. EPC is a limited liability company organized under the laws of State of Delaware which maintains its principal place of business at 6 Research Drive, Shelton, Connecticut. Plaintiff is naming EPC

6

as a defendant as directed by the State Court in its June 1, 2023 Amended Joinder Order and pursuant to the findings and rulings of the Federal Court in its October 17, 2023 Order Denying Motion to Remand.

31.     According to information provided by Defendants in this action, EPC markets and sells Wet Ones®.

32.     Defendant Playtex Manufacturing, Inc. ("Playtex") is a wholly owned subsidiary of Edgewell which is 100% controlled by Edgewell. Playtex's sole shareholder is Playtex Products, LLC. Playtex Products, LLC's sole member is EPC Brands, and EPC Brands' sole member is Edgewell. Playtex is corporation organized under the laws of the State of Delaware which maintains its principal place of business at 6 Research Drive, Shelton, Connecticut. Plaintiff is naming Playtex as a defendant as directed by the State Court in its June 1, 2023 Amended Joinder Order and pursuant to the findings and rulings of the Federal Court in its October 17, 2023 Order Denying Motion to Remand.

33.     According to information provided by Defendants in this action, Playtex and some of its third-party manufacturers manufacture Wet Ones®.

**Jurisdiction and Venue**

34.     Edgewell is incorporated in the State of Missouri, is registered to do business in the State, and has designated a registered agent for the service of process in the State. This Court has general and specific personal jurisdiction over Edgewell.

35.     Defendants EPC, EPC Brands, and Playtex have consented to this Court's jurisdiction by joining in Edgewell's motion to join them as defendants in this action and by voluntarily appearing in this action through Edgewell's counsel since March 29, 2022.

36.     Venue is proper in Jackson County, Missouri pursuant to Mo. Rev. Stat. § 407.025.1 because Plaintiff purchased Wet Ones® hand wipes in Jackson County, Missouri.

7

Venue also is proper in Jackson County, Missouri pursuant to Mo. Rev. Stat. § 508.010.4 because Jackson County, Missouri is the place where Plaintiff was first injured by Defendants' conduct.

37.     Jackson County, Missouri is in the Western Division of the United States District Court of the Western District of Missouri. Accordingly, venue is proper in the Western Division of this District in this removed action.

## Factual Allegations

38.     Edgewell is a consumer products company which owns a number of personal care brands, including the Wet Ones® brand of hand wipes and related products. Edgewell owns, operates, and manages these brands of personal care products through wholly owned subsidiary limited liability companies and corporations, including Defendants EPC, EPC Brands, and Playtex. These subsidiaries function as divisions or business units of Edgewell and are integrated into Edgewell for all purposes relevant to this case.

39.     Edgewell and its subsidiaries EPC and EPC Brands market and sell Wet Ones® antibacterial hand wipes. The products come in a variety of packaging and scents, but all packaging prominently represents to consumers that the product "Kills 99.99% of Germs." This is the predominant selling feature of the wipes, with the representation of germ-killing ability displayed prominently on the front center of the packaging with impossible-to-miss text set against a background of a different, highly contrasting color compared to the primary package color. For example:



40. Defendants' representation that the Wet Ones® hand wipes "kill 99.99% of germs" is false, deceptive, and misleading.

41. Throughout the Class period in this case (*i.e.*, since August 27, 2015), Edgewell and its subsidiaries EPC and EPC Brands have continuously labeled Wet Ones® hand wipes with the prominent label "Kills 99.99% of Germs."

42. The hand wipes are alcohol-free. At the time Plaintiff purchased Wet Ones® hand wipes in early 2016, the active ingredient in the product was Benzethonium Chloride (0.3%)

("BEC"). Since approximately August 2019, the hand wipes instead have used Benzalkonium Chloride (0.13%) ("BAC") as the active ingredient. BEC and BAC are both quaternary ammonium compounds, and neither BEC nor BAC is scientifically proven as a safe, effective alternative to alcohol-based sanitizers.

43.     On April 12, 2019, the United States Food and Drug Administration ("FDA") issued its final action on a 2016 proposed rule concerning over-the-counter ("OTC") antiseptic drug products sold in the United States, including Wet Ones® hand wipes. Safety and Effectiveness of Consumer Antiseptic Rubs; Topical Antimicrobial Drug Products for Over-the-Counter Human Use, 84 Fed. Reg. 14,847 (April 12, 2019) (the "2019 Final Rule"). In the 2019 Final Rule, the FDA stated that more than 20 active ingredients—including BEC—were no longer eligible for OTC Drug Review because of inadequate evidence of eligibility for such evaluation. *Id.* at 14,851. The 2019 Final Rule gave manufacturers of consumer antiseptic rubs one year after the date of publication to comply with the rule. *Id.* at 14,860.

44.     As a result of the 2019 Final Rule, manufacturers and sellers of consumer antiseptic hand wipes that used BEC or any of the other 28 ingredients the FDA had found ineligible were required to reformulate their products with an eligible active ingredient (such as BAC) in order to continue marketing their consumer wipes as antiseptic products. U.S. Department of Health and Human Services Food and Drug Administration Center for Drug Evaluation and Research, *Consumer Antiseptic Rub Final Rule Questions and Answers – Guidance for Industry, Small Entity Compliance Guide* at 6 Q3 (December 2020).

45.     The FDA's adoption of the 2019 Final Rule prompted Defendants to replace BEC with BAC as the active ingredient in Wet Ones®, but the product label was unchanged (except for the identification of the active ingredient on the back panel). The product continued to be

prominently labeled with the banner on the front proclaiming "Kills 99.99% of Germs" without any change.

46.     As the Centers for Disease Control and Prevention notes, "available evidence indicates benzalkonium chloride has less reliable activity against certain bacteria and viruses than either of the alcohols." https://www.cdc.gov/coronavirus/2019-ncov/hcp/hand-hygiene.html.

47.     Defendants market both the alcohol-free Wet Ones® product at issue in this case and their alcohol-based Wet Ones® antibacterial hand wipes with the identical germ-killing representation: that each product "Kills 99.99% of Germs." This representation implies to consumers that both the alcohol-based version and the alcohol-free version (using either BAC or BEC as the active ingredient) have similar germ-killing efficacy. This representation is false, deceptive, and misleading because BAC and BEC are less effective than alcohol in killing certain types of bacteria and viruses.

48.     The term "germs" is commonly understood to mean pathogenic microorganisms, including bacteria, viruses, and fungi.

49.     For example, the United States Environmental Protection Agency notes that "[t]he use of the 'germs' term over time has come to be commonly associated with disease-causing organisms, including ones caused by bacteria, viruses or fungi" and that it "considers a germ claim to be a broad term that encompasses bacteria, viruses and/or fungi." United States Environmental Protection Agency, *Use of the Term 'Germs' on Antimicrobial Labels* (Jan. 5, 2005), available at: https://www.epa.gov/pesticide-labels/use-term-germs-antimicrobial-labels.     Leading     medical institutions similarly describe "germs" to include bacteria, viruses, and fungi. *See* Mayo Clinic, *Germs: Understand and protect against bacteria, viruses and infection*, available at: https://www.mayoclinic.org/diseases-conditions/infectious-diseases/in-depth/germs/art-

20045289; Cedars Sinai, *Viruses, Bacteria and Fungi: What's the Difference?*, available at: https://www.cedars-sinai.org/blog/germs-viruses-bacteria-fungi.html.

50.     Common dictionary definitions of "germ" include viruses and other microbial pathogenic agents. *See, e.g., Germ*, THE MERRIAM-WEBSTER DICTIONARY (definition 3), https://www.merriam-webster.com/dictionary/germ ("a microorganism causing disease: a pathogenic agent (such as a bacterium or virus) *broadly*: MICROORGANISM"); *Germ*, COLLINS ONLINE ENGLISH DICTIONARY (definition 1), https://www.collinsdictionary.com/ us/dictionary/english/germ ("A germ is a very small organism that causes disease. **Synonyms**: microbe, virus, bug [informal], bacterium"); *Germ* (definition 3), THE AMERICAN HERITAGE® DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2022), https://www.ahdictionary.com/word/search.html?q=germ ("A microorganism, especially a pathogen.").

51.     Consistent with the common understanding of the word, Plaintiff understands the term "germs" to mean pathogenic microorganisms, including bacteria, viruses, and fungi.

52.     BAC and BEC are quaternary ammonium compounds, a group of chemical disinfectants that can kill certain pathogenic microorganisms by causing inactivation of energy-producing enzymes, denaturation of essential cell proteins, and disruption of the cell membrane.

53.     Contrary to Defendants' representation of Wet Ones® hand wipes, however, BAC and BEC are ineffective against many classes of pathogenic microorganisms, including but not limited to non-enveloped viruses, gram-negative bacteria, and bacterial spores. These classes of microorganisms include hundreds of species, including categories of microorganisms that are commonly encountered and easily transmitted by hand-to-hand or surface-to-hand contact, such as non-enveloped viruses, human rhinoviruses (the most common cause of the common cold), noroviruses (the leading cause of vomiting and diarrhea (commonly called "the stomach flu")),

and rotaviruses (which commonly causes severe, watery diarrhea and vomiting in infants and young children).

54.     BAC and BEC are ineffective against human papilloma virus (a common non-enveloped virus), commonly known as "HPV." There are more than 100 varieties of HPV. HPV is transmitted primarily through skin-to-skin contact, including by contact with someone who is carrying HPV on their hands or findings or by touching something that someone else touched who carried HPV on their hands.

55.     Wet Ones® is also ineffective against certain common spores that cause disease and that are found on and carried by the human hand, such as C. Difficile and cryptosporidium.

56.     C. Difficile is a Gram-positive spore-forming bacteria that is a leading cause of infection in the colon. Symptoms of C. Difficile (often called "C. diff.") infection can range from diarrhea to life-threatening damage to the colon. C. diff. infections can be fatal, particularly in persons over the age of 65.

57.     Cryptosporidium is a category of protozoan pathogens that includes the parasites that cause toxoplasmosis. The pathogen that causes toxoplasmosis is commonly found in cat litter and undercooked food and is one of the most common parasitic infections in humans.

58.     Cryptosporidium are protected by an outer shell that makes them very difficult to kill, rendering BAC and BEC ineffective against cryptosporidium. Human hands can be contaminated by cryptosporidium in a number of ways, including by touching surfaces or objects that are contaminated, by changing cat litter, by changing diapers, or by caring for an infected person.

59.     BAC also has not been proven to be effective against human coronaviruses. Despite acknowledging on its website in 2020 the fact that "Wet Ones® has not been tested against COVID-19," Edgewell continued marketing the product throughout the COVID-19 pandemic as

a product that "Kills 99.99% of Germs." Furthermore, Defendants' sales of the product increased substantially during the first year of the pandemic as consumers sought out products that would protect them from the novel coronavirus, demonstrating that many reasonable consumers interpreted the "Kills 99.99% of Germs" label as a representation that the product is effective against viruses including the variations of the coronavirus that cause COVID-19.

60. Defendants have repeatedly acknowledged in their court filings in this action that they are prohibited by federal law from making any claims that Wet Ones® is effective against viruses. Nevertheless, Defendants have continued to market the product throughout the Class Period as a product that "Kills 99.99% of Germs," not a product that "Kills 99.99% of Bacteria," and Defendants have reaped the benefit of substantial increases in sales of the products during the COVID-19 pandemic.

61. Not only are BAC and BEC ineffective against many classes of pathogenic microorganisms, but their efficacy as a consumer disinfectant when used in wipe form is also substantially limited by common environmental factors and variables such as the interaction of the disinfectant and wipe material, the length of time the wipes have been in the canister, ambient environmental conditions, the presence of organic debris on the user's hands, and user application method.

62. BAC and BEC are slow to act, meaning that they generally must remain on hands for more time than soap and water or an alcohol-based hand sanitizer in order to kill germs. Yet Defendants represent that Wet Ones® "Kills 99.99% of Germs" without disclosing that the active ingredient in Wet Ones® is slow to act and must remain on hands for a longer period of time in order to be effective.

63. For all of these reasons, the common and ordinary use of Wet Ones® does not kill more than 99.99% of germs as Defendants represent.

64.     As referenced above, Plaintiff purchased Wet Ones® in early 2016 at a Walmart store in Lee's Summit, Missouri. Plaintiff purchased Wet Ones® for her mother-in-law, Florence Louise Lawrence, who had a history of C. Difficile infections and chronic urinary tract infections. Plaintiff's mother-in-law was elderly, living in assisted living, had compression fractures, and had trouble leaning over the sink to wash her hands, and Plaintiff purchased Wet Ones® so Ms. Lawrence would be able to disinfect her hands properly when she was unable to get far enough over the faucet to wash her hands adequately.

65.     At the time she purchased the product, Plaintiff read the label on the front of the Wet Ones® canister promising that the product would "Kill[ ] 99.99% of Germs." Plaintiff read that label specifically looking for something to help protect Ms. Lawrence because Ms. Lawrence had chronic problems with urinary tract infections and chronic problems with C. Difficile infections.

66.     At the time she purchased the Wet Ones® product, Plaintiff was looking for the maximum value by maximum protection against infection for the price. Plaintiff purchased Wet Ones® because Defendants represented that the product "Kills 99.99% of Germs," and Plaintiff wanted a product that would protect Ms. Lawrence from microbial infections.

67.     Had Plaintiff known at the time that the "Kills 99.99% of Germs" representation on the label of the Wet Ones® canister was false, she would not have purchased the product.

68.     All Missouri consumers who purchased Wet Ones® antibacterial wipes have suffered uniform financial injury and ascertainable loss at the point of sale caused by false, deceptive, and misleading marketing of the product that was different than advertised because it does not "kill 99.99% of germs." Defendants' unlawful conduct has deprived all consumers of the benefit of the bargain and caused them ascertainable loss because the product purchased did not have the qualities and characteristics advertised and was worth less than a product actually having

the advertised features. Damages for each consumer are measured as a portion of the product purchase price (some or all of the product purchase price) reflecting the value of misrepresented product attributes.

## **Class Action Allegations**

69.     The MMPA authorizes Plaintiff to bring this suit as a class action because Defendants' alleged unlawful conduct has "caused similar injury to numerous other persons." Mo. Rev. Stat. § 407.025.2.

70.     Plaintiff brings this class action against Edgewell for violation of the MMPA pursuant to Mo. R. Civ. P. 52.08 and Section § 407.025 on behalf of all consumers who have purchased Wet Ones® antibacterial hand wipes represented to "kill 99.99% of germs" in the State of Missouri for personal, family or household purposes at any time from August 27, 2015, to the present and who were citizens of the State of Missouri on the date this Class Action Petition was filed (the "Class"). Excluded from the Class are (1) Edgewell, its subsidiaries and affiliates, and its directors and officers and members of their immediate families; (2) federal, state, and local governmental entities; and (3) any judicial officers presiding over this action, their judicial staff, and members of their immediate families.

71.     Members of the Class are so numerous that their individual joinder herein is impracticable.

72.     Common questions of law and fact exist for all class members. The MMPA claims of Plaintiff and the Class arise from a common nucleus of operative facts including questions regarding: (1) the existence of Defendants' uniform representation about the germ-killing ability of the Wet Ones® hand wipes; (2) whether Defendants' representations are false, deceptive and misleading; and (3) whether consumers have suffered uniform economic harm from the purchase of the falsely, deceptively and misleadingly marketed Wet Ones® hand wipes. The claims of

16

Plaintiff and the Class involve common questions of law regarding the legality of Defendants' conduct under the MMPA and the entitlement of class members to damages under that statute. These common questions of law and fact are amenable to class-wide resolution based on common evidence.

73. Plaintiff's MMPA claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' unlawful conduct. Plaintiff has no interests that are antagonistic to the interests of other class members. Plaintiff and all members of the Class have sustained similar economic injury arising out of the alleged unlawful conduct for which Edgewell is liable.

74. Plaintiff is a fair and adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent. Plaintiff has retained competent and experienced counsel, who are fair and adequate representatives of the proposed Class because they will vigorously prosecute this action and do not have any conflicts of interest with the Class. The interests of Class members will be fairly and adequately protected in this lawsuit by Plaintiff and her counsel.

75. Common issues predominate over individual issues in this case because the overriding issues of liability and damages under the MMPA can be determined on a class-wide basis from common evidence regarding Defendants' uniform misconduct and the uniform economic harm to class members who purchased Wet Ones® hand wipes.

76. Class treatment is the superior method of adjudicating the class members' MMPA claims because it avoids the inefficiencies and inconsistencies of piecemeal litigation and ensures that all class members are given their day in Court that would not otherwise be possible for such small value claims. Class treatment also is expressly authorized by the MMPA. *See* Mo. Rev. Stat. § 407.025.2.

77.     On May 26, 2023, the State Court issued its Order Granting Motion for Class Certification, in which the State Court certified a class of Missouri consumers as described in Paragraph 14, above. Accordingly, Plaintiff and her counsel bring this action as a class action pursuant to the May 26, 2023 Order Granting Motion for Class Certification.

<u>**Count I**</u>
**(Violation of the Missouri Merchandising Practices Act)**

78.     Plaintiff incorporates by reference the allegations in all paragraphs of this Petition as though fully set forth in this paragraph.

79.     Plaintiff brings this MMPA claim against Defendants individually and on behalf of the members of the proposed Class, all of whom purchased Wet Ones® antibacterial hand wipes for personal, family or household purposes.

80.     Wet Ones® hand wipes are "merchandise" under the MMPA, which is defined to include "any objects, wares, goods, [or] commodities." Mo. Rev. Stat. § 407.010(4).

81.     At all times during the class period, Defendants have made false, deceptive and misleading representations about the germ-killing ability of Wet Ones® hand wipes. Defendants' unlawful marketing of the product has been, and continues to be, conducted through a uniform advertising campaign consisting of on-product claims, website content and other similar public disseminations.

82.     Defendants' representations about the germ-killing characteristics of Wet Ones® hand wipes are unlawful under the MMPA because they are false and have a capacity to mislead prospective purchasers about purported product benefits that lack support. *See* Mo. Code Regs. Ann. tit. 15, § 60-7.020(1).

83.     Defendants' representations about the germ-killing characteristics of Wet Ones® hand wipes are unlawful under the MMPA because they omit material facts about the limited

effectiveness of the hand wipes and the lack of support for their purported benefits. *See* Mo. Code Regs. Ann. tit. 15, § 60-7.030(1).

84. Defendants' representations about the germ-killing characteristics of Wet Ones® hand wipes are unlawful under the MMPA because Edgewell does not have a reasonable basis for making performance claims in that regard. The representation that Wet Ones® "Kills 99.99% of Germs" implies that Defendants have tested the product against all germs, including pathogenic bacteria and viruses, in order to substantiate that the product kills 99.99% of germs when used as a hand wipe. But Defendants have not tested the product to confirm its germ-killing ability against 99.99% of germs. No competent and reliable scientific evidence exists to show that the use of Wet Ones® on consumers' hands actually kills 99.99% of all germs. *See* Mo. Code Regs. Ann. tit. 15, § 60-7.040(1).

85. Defendants' representations about the germ-killing characteristics of Wet Ones® hand wipes constitute unfair practices under the MMPA because they offend public policy, are unethical and unscrupulous, and present a risk of substantial injury to consumers who purchase the product. *See* Mo. Code Regs. Ann. tit. 15, § 60-8.020(1).

86. Defendants' representations about the germ-killing characteristics of Wet Ones® hand wipes constitute unfair practices under the MMPA because it is unconscionable for Edgewell to make false, deceptive and misleading claims regarding consumer health and safety. *See* Mo. Code Regs. Ann. tit. 15, § 60-8.080(1).

87. Defendants' representations about the germ-killing characteristics of Wet Ones® hand wipes are deceptive under the MMPA because they have the tendency or capacity to mislead, deceive and cheat consumers into believing that the product has health and safety benefits that do not actually exist. *See* Mo. Code Regs. Ann. tit. 15, § 60-9.020(1).

88.     Defendants' representations about the germ-killing characteristics of Wet Ones®️ hand wipes are deceptive under the MMPA because they tend to create a false impression that the product provides health and safety benefits that do not actually exist. *See* Mo. Code Regs. Ann. tit. 15, § 60-9.020(1).

89.     Defendants' representations about the germ-killing characteristics of Wet Ones®️ hand wipes constitute unlawful misrepresentations under the MMPA because they are assertions that are not in accord with the facts. *See* Mo. Code Regs. Ann. tit. 15, § 60-9.070(1).

90.     Defendants' representations about the germ-killing characteristics of Wet Ones®️ hand wipes constitute unlawful misrepresentations under the MMPA because they contain material untruths about the purported health and safety benefits of the product. *See* Mo. Code Regs. Ann. tit. 15, § 60-9.080(1).

91.     Defendants' representations about the germ-killing characteristics of Wet Ones®️ hand wipes constitute unlawful misrepresentations under the MMPA because they use half-truths to advertise the purported health and safety benefits of the product while omitting material facts necessary to make the representations not misleading, including information regarding the lack of scientific support for Defendants' claims, the ineffectiveness of BAC against many pathogenic microorganisms, and the otherwise limited efficacy of the product given common environmental factors and variables. *See* Mo. Code Regs. Ann. tit. 15, § 60-9.090(1).

92.     Defendants' representations about the germ-killing characteristics of Wet Ones®️ hand wipes constitute fraudulent misrepresentations under the MMPA because they make claims about the purported health and safety benefits of the product that Edgewell knows are not in accord with the facts and/or that Edgewell knows do not have a reasonable basis. *See* Mo. Code Regs. Ann. tit. 15, § 60-9.100(1).

93.     Defendants' representations about the germ-killing characteristics of Wet Ones®
hand wipes are unlawful under the MMPA because they conceal, suppress and omit material facts
from consumers regarding the lack of scientific support for Defendants' claims, the ineffectiveness
of BAC against many pathogenic microorganisms, and the otherwise limited efficacy of the
product given common environmental factors and variables. *See* Mo. Code Regs. Ann. tit. 15,
§ 60-9.100(1)-(3).

94.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the
members of the Class have suffered an ascertainable loss of money under the benefit of the bargain
rule by paying more for Wet Ones® antibacterial hand wipes than the product was worth had it
not been falsely, deceptively, misleadingly and unfairly represented. This constitutes a uniform,
objective measure of damages for each class member, determined at the time of purchase without
regard to any individualized consideration of transactional motivation or subsequent use of the
product. Damages for each consumer can be measured as the portion of the product purchase price
(some or all of the product purchase price) reflecting the value of the falsely, deceptively,
misleadingly or unfairly advertised product attributes.

95.     Plaintiff and the Class are entitled to punitive damages under the MMPA because
Defendants' conduct involves a high degree of moral culpability and was wanton, outrageous
and/or made with reckless disregard to the consequences to Plaintiff and the members of the Class.

## **Prayer for Relief**

WHEREFORE, Plaintiff Connie Curts prays for judgment in favor of herself and the class
against Defendants Edgewell Personal Care Company, Edgewell Personal Care, LLC, Edgewell
Personal Care Brands, LLC, and Playtex Manufacturing, Inc., for actual damages, punitive
damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, costs of suit, and
any other appropriate relief.

21

**Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

SHANK & HEINEMANN, LLC

By: _/s/ David L. Heinemann_
      Christopher S. Shank     MO #28760
      David L. Heinemann     MO #37622
      Katherine A. Feierabend  MO #73699
      1968 Shawnee Mission Pkwy, Suite 100
      Mission Woods, Kansas 66205
      Telephone:  816.471.0909
      Facsimile:   816.471.3888
      chris@shanklawfirm.com
      david@shanklawfirm.com
      katie@shanklawfirm.com

*Attorneys for Plaintiff Connie Curts*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of October 2023, the foregoing document was electronically filed with the Court using the CM/ECF system, which provided electronic service of the document to the following counsel of record:

John W. Moticka
Stinson LLP
7700 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105
john.moticka@stinson.com

Megan McCurdy
Ashley Crisafulli
Courtney J. Harrison
Stinson LLP
1201 Walnut, Suite 2900
Kansas City, MO 64106
megan.mccurdy@stinson.com
ashley.crisafulli@stinson.com
courtney.harrison@stinson.com
***Attorneys for Defendants***

       _/s/ David L. Heinemann_
       Attorney for Plaintiff Connie Curts

22